# EXHIBIT 1

Clerk of the Superior Court
\*\*\* Electronically Filed \*\*\*
M. Owen, Deputy
2/4/2025 7:09:56 PM
Filing ID 19282793

Donald Peder Johnsen (011545)
GALLAGHER & KENNEDY, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
(602) 530-8000
Attorneys for plaintiff

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| DARREN TOOHEY, | |
| Plaintiff, | **COMPLAINT**   CV2025-004685 |
| v. | (Wages, Breach of Contract, Breach of Covenant of Good Faith and Fair Dealing) |
| CWT US, LLC, | |
| Defendant. | |

Plaintiff Darren Toohey ("Mr. Toohey"), for his complaint against defendant CWT US, LLC ("the Company"), alleges as follows:

**JURISDICTION AND VENUE**

1. Mr. Toohey is a resident of Maricopa County, Arizona.

2. The Company is Delaware corporation that is present and doing business in Maricopa County, Arizona, and that has caused events to occur in Maricopa County out of which the claims in this action arise.

3. The acts alleged in this complaint include acts that occurred in Maricopa County, and the amount in controversy is sufficient to satisfy this Court's jurisdictional requirement.

4. This Court has jurisdiction in this action under Ariz. Const. art. 6, §14, and A.R.S. § 12-123.

5. Venue is proper in this Court under A.R.S. § 12-401.

6. The amount of all monetary damages sought in this action, without duplication for alternative theories, and excluding claims for punitive damages, interest, attorney's fees, and costs, is such as to qualify for assignment to Tier 3 under Ariz. R. Civ. P. 26.2(c)(3)(C).

## GENERAL ALLEGATIONS

7. Mr. Toohey was employed by the Company as its Head of Global Sales. His compensation package included eligibility for an annual Sales Leader Incenting Program (or "SLIP") bonus based on the achievement of goals for the generation of new accounts. Under the SLIP program each year the Company set specific annual figures for incentive bonuses corresponding to specifically stated levels of new accounts' anticipated sales.

8. In the years after the COVID pandemic the catastrophic impact of the pandemic upon corporate travel made it practically impossible for new accounts to reliably estimate the level of new travel business that they could anticipate they would have for the Company.

9. As a result, commencing in 2020 the Company booked new accounts' anticipated travel business on the basis of those new accounts' reported 2019 travel numbers, and the Company then paid appropriate SLIP bonuses on the basis of the 2019 numbers that it had booked for those new accounts.

10. Over the years since 2020, therefore, the course of the parties' dealings under the SLIP program (as well as internal correspondence in 2023 concerning planning for SLIP bonuses for that year) established that Mr. Toohey's SLIP bonuses for 2023 and 2024 would be calculated on the basis of those new accounts' 2019 numbers.

11. Under the course of the parties' dealings under the SLIP program, Mr. Toohey expected to receive his SLIP bonus for 2023 in March 2024.

12. Based upon the Company's information concerning new accounts generated during 2023 and those new accounts' 2019 numbers, Mr. Toohey's SLIP bonus for 2023 was $510,000.00. But the Company advised him that it was going to pay him only half that amount.

-2-

13. Mr. Toohey inquired about the remainder of his bonus, but the Company refused to pay such remainder. He was informed that CWT leadership had decided to simply pay him an amount roughly half that called for under his written SLIP bonus plan for 2023, and that the Company would not pay him any additional amount for his 2023 SLIP bonus.

14. Mr. Toohey has made demand for payment of the remainder of his SLIP bonus for 2023 ($255,000.00), but to date the Company has not made such payment.

15. The Company also advised Mr. Toohey that upsells to existing accounts in 2024 would be credited to his eligibility for his SLIP bonus for 2024; his SLIP bonus for 2024, that is, would be calculated on the basis of increased business from existing accounts as well as business booked on new accounts.

16. The Company advised Mr. Toohey on December 9, 2024, that it was altering the terms of his 2024 SLIP bonus (for services already performed in 2024). In most pertinent part, the Company advised that his 2024 SLIP bonus would be calculated on the basis of new accounts' "most current data used for pricing purposes and captured in CRM." In practical effect, therefore, the Company was advising him after the fact for work already performed that his 2024 SLIP bonus would not be calculated on the basis of his new accounts' 2019 numbers, although that had been the parties' course of dealing and the Company's policy since 2020.

17. The Company has not yet provided Mr. Toohey with a final detail of new accounts generated or upsells on existing accounts during 2024. Upon the final computation of new accounts generated and upsells on existing accounts in 2024 Mr. Toohey also will be entitled to calculation and payment of his 2024 SLIP bonus for new accounts generated prior to December 9 on the basis of those new accounts' reported 2019 travel numbers, and on upsells on existing accounts in 2024.

18. Mr. Toohey terminated his employment with the Company effective January 17, 2025. To date the Company has not paid him the remainder of his SLIP bonus for 2023, or any portion of his SLIP bonus for 2024.

## COUNT ONE: FAILURE TO PAY WAGES

19. Mr. Toohey restates and incorporates here by reference paragraphs 1 through 18 of his complaint, above.

20. Mr. Toohey was the Company's "employee" within the meaning of A.R.S. §§ 23-350 to 23-355.

21. The Company was Mr. Toohey's "employer" within the meaning of A.R.S. §§ 23-350 to 23-355.

22. Based upon the parties' course of dealing and the Company's policy and practice with respect to calculation and payment of SLIP bonuses on the basis of new accounts' 2019 numbers, and upon the Company's statements to Mr. Toohey and others concerning the calculation and payment of SLIP bonuses on the basis of new accounts' 2019 numbers, Mr. Toohey had a reasonable expectation that his SLIP bonus for 2023 would be calculated and paid on the basis of new accounts' 2019 numbers, and a reasonable expectation of being paid the full amount of his SLIP bonus for 2023. Under those circumstances his SLIP bonus for 2023 constitutes "wages" within the meaning of A.R.S. §§ 23-350 to 23-355.

23. The Company is and was not required or empowered by any state or federal law to withhold or divert any portion of Mr. Toohey's SLIP bonus for 2023, including without limitation the portion of that bonus that remains unpaid.

24. Mr. Toohey did not authorize the Company to withhold or divert any portion of his SLIP bonus for 2023, including without limitation the portion of that bonus that remains unpaid.

25. Based upon the parties' course of dealing and the Company's policy and practice with respect to calculation and payment of SLIP bonuses on the basis of new accounts' 2019 numbers, and upon the Company's statements to Mr. Toohey and others concerning the calculation and payment of SLIP bonuses on the basis of new accounts' 2019 numbers, no reasonable good faith dispute exists as to the amount of his 2023 SLIP bonus that remains unpaid.

26. The Company's refusal to pay Mr. Toohey the full amount of his SLIP bonus for 2023 on the basis of new accounts' 2019 numbers as described in this complaint constitutes a violation of A.R.S. §§ 23-350 to 23-355, entitling Mr. Toohey to recover damages from the Company.

WHEREFORE, Mr. Toohey requests judgment against the Company on count one as follows:

    a. for compensatory damages in an amount to be determined at trial, and treble damages thereon in accord with A.R.S. 23-355(A);

    b. for costs, disbursements, and attorneys' fees in accord with A.R.S. §§ 12-341 and 12-341.01;

    c. for pre-judgment and post-judgment interest on the amounts set forth above as appropriate, calculated at the legal rates until paid; and

    d. for such other and further relief that the Court deems appropriate.

**COUNT TWO: BREACH OF CONTRACT**

27. Mr. Toohey restates and incorporates here by reference paragraphs 1 through 26 of his complaint, above.

28. The Company offered to employ Mr. Toohey under (inter alia) the terms and conditions described in this complaint, including calculation and payment of a SLIP bonus for 2023 on the basis of new accounts' 2019 numbers in the manner described in this complaint, and Mr. Toohey accepted that offer by continuing to provide services for the Company on the strength of that offer.

29. The Company and Mr. Toohey both received valid legal consideration for their respective promises in that agreement ("the 2023 SLIP Bonus Agreement"); the Company received Mr. Toohey's services, and Mr. Toohey received the Company's promise to pay him the agreed-upon compensation for those services.

30. The parties' 2023 SLIP Bonus Agreement constitutes a valid and enforceable contract.

31. Mr. Toohey performed all of his own obligations under the 2023 SLIP Bonus Agreement.

32. The Company's failure and refusal to pay Mr. Toohey the full amount of his SLIP bonus for 2023 on the basis of new accounts' 2019 numbers as described in this complaint constitutes a breach of contract that has caused him to incur damages, entitling him to recover damages from the Company.

WHEREFORE, Mr. Toohey requests judgment against the Company on count two as follows:

   a. for compensatory damages in an amount to be determined at trial;
   b. for costs, disbursements, and attorneys' fees in accord with A.R.S. §§ 12-341 and 12-341.01;
   c. for pre-judgment and post-judgment interest on the amounts set forth above as appropriate, calculated at the legal rates until paid; and
   d. for such other and further relief that the Court deems appropriate.

**COUNT THREE: BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**

33. Mr. Toohey restates and incorporates here by reference paragraphs 1 through 32 of his complaint, above.

34. The 2023 SLIP Bonus Agreement is a valid contractual relationship between Mr. Toohey and the Company.

35. By operation of Arizona law, the 2023 SLIP Bonus Agreement included an implied promise by the parties to act fairly and in good faith in their dealings with each other, and not to impair their rights to receive the benefits of their agreement.

36. The rights and benefits of the parties' agreement included Mr. Toohey's right to calculation and payment of the full amount of his SLIP bonus for 2023 on the basis of new accounts' 2019 numbers.

37. The Company's failure and refusal to pay Mr. Toohey the full amount of his SLIP bonus for 2023 on the basis of new accounts' 2019 numbers as described in this complaint

constitutes a breach of the implied covenant of good faith and fair dealing that has caused him to incur damages, entitling him to recover damages from the Company.

WHEREFORE, Mr. Toohey requests judgment against the Company on count three as follows:

    a. for compensatory damages in an amount to be determined at trial;

    b. for costs, disbursements, and attorneys' fees in accord with A.R.S. §§ 12-341 and 12-341.01;

    c. for pre-judgment and post-judgment interest on the amounts set forth above as appropriate, calculated at the legal rates until paid; and

    d. for such other and further relief that the Court deems appropriate.

**COUNT FOUR: ANTICIPATORY BREACH OF CONTRACT**

38. Mr. Toohey restates and incorporates here by reference paragraphs 1 through 37 of his complaint, above.

39. The Company offered to employ Mr. Toohey under (<u>inter alia</u>) the terms and conditions described in this complaint, including calculation and payment of a SLIP bonus for 2024 on the basis of new accounts' 2019 numbers and upsells on existing accounts in the manner described in this complaint, and Mr. Toohey accepted that offer by continuing to provide services for the Company on the strength of that offer.

40. The Company and Mr. Toohey both received valid legal consideration for their respective promises in that agreement ("the 2024 SLIP Bonus Agreement"); the Company received Mr. Toohey's services, and Mr. Toohey received the Company's promise to pay him the agreed-upon compensation for those services.

41. The parties' 2024 SLIP Bonus Agreement constitutes a valid and enforceable contract.

42. The Company has repudiated the parties' 2024 SLIP Bonus Agreement by showing its clear intent not to pay Mr. Toohey the bonus called for under that Agreement.

43. At the time of the Company's repudiation of the parties' 2024 SLIP Bonus Agreement, Mr. Toohey had performed all of his own obligations under that Agreement.

44. The Company's repudiation of the parties' 2024 SLIP Bonus Agreement constitutes an anticipatory breach of contract that has caused or will cause Mr. Toohey to incur damages, entitling him to recover damages from the Company.

WHEREFORE, Mr. Toohey requests judgment against the Company on count four as follows:

    a. for compensatory damages in an amount to be determined at trial;

    b. for costs, disbursements, and attorneys' fees in accord with A.R.S. §§ 12-341 and 12-341.01;

    c. for pre-judgment and post-judgment interest on the amounts set forth above as appropriate, calculated at the legal rates until paid; and

    d. for such other and further relief that the Court deems appropriate.

**COUNT FIVE: ANTICIPATORY BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**

45. Mr. Toohey restates and incorporates here by reference paragraphs 1 through 44 of his complaint, above.

46. The 2024 SLIP Bonus Agreement is a valid contractual relationship between Mr. Toohey and the Company.

47. By operation of Arizona law, the 2024 SLIP Bonus Agreement included an implied promise by the parties to act fairly and in good faith in their dealings with each other, and not to impair their rights to receive the benefits of their agreement.

48. The rights and benefits of the parties' agreement included Mr. Toohey's right to calculation and payment of the full amount of his SLIP bonus for 2024 on the basis of new accounts' 2019 numbers and upsells on existing accounts.

49. At the time of the Company's repudiation of the parties' 2024 SLIP Bonus Agreement, Mr. Toohey had performed all of his own obligations under that Agreement.

50. The Company's repudiation of the parties' 2024 SLIP Bonus Agreement as described in this complaint constitutes an anticipatory breach of the implied covenant of good

faith and fair dealing that has caused Mr. Toohey to incur damages, entitling him to recover damages from the Company.

WHEREFORE, Mr. Toohey requests judgment against the Company on count five as follows:

    a. for compensatory damages in an amount to be determined at trial;

    b. for costs, disbursements, and attorneys' fees in accord with A.R.S. §§ 12-341 and 12-341.01;

    c. for pre-judgment and post-judgment interest on the amounts set forth above as appropriate, calculated at the legal rates until paid; and

    d. for such other and further relief that the Court deems appropriate.

DATED this 4th day of February, 2025.

GALLAGHER & KENNEDY, P.A.

By: /s/ Donald Peder Johnsen
Donald Peder Johnsen
2575 East Camelback Road
Phoenix, Arizona 85016-9225
Attorneys for plaintiff

10240384